978 F.2d 1264
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well.
Deanna PRIDGEN, Appellant,
v.
Winston BURTON, Principal; Joel Denny, Assistant
Superintendent Elementary Education; The School
District of Springfield, Appellees.
 No. 91-3735.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: August 30, 1992.
Filed: November 4, 1992.
 
 Before JOHN R. GIBSON, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Deanna Pridgen appeals from the district court's[1] judgment in favor of defendants in her Title VII action alleging sex-based discrimination in employment. We affirm.
 
 
 2
 The Springfield R-12 School District (District) hired Pridgen as a probationary teacher in 1985. During the 1985-86 school year, Pridgen taught one kindergarten class at each of two schools, Cherokee and Mark Twain (Twain). Dr. Sandra Gray, the principal of Cherokee, and Sharon Hardecke, the principal of Twain, evaluated Pridgen's performance as less than satisfactory. The District renewed Pridgen's contract for the 1986-87 school year. Pridgen was assigned to teach second grade at Ed V. Williams elementary school (Williams). Winston Burton, the principal of Williams, conducted three evaluations of Pridgen-two formative and one summative. In preparation for the first formative evaluation, Pridgen submitted a lesson plan to Burton on a form provided by the District. Burton hand-copied her lesson plan onto a larger, more current form and discarded the original.
 
 
 3
 Burton observed Pridgen's social studies class in November 1986 and prepared the first formative evaluation. Burton had some concerns about her performance and suggested they conduct another formative evaluation on another subject at a later date. Pridgen agreed. In February 1987, Burton observed Pridgen's reading class and prepared a second formative evaluation. Burton again had a number of concerns and noted that, as a result of the evaluation, either an assistance team might be assigned to help Pridgen improve or her contract might not be renewed.
 
 
 4
 In March 1987, Burton prepared a summative evaluation based in part on the formative evaluations, classroom walk-throughs, substitute-teacher input, and parent input. Burton found that Pridgen met District standards in only five areas; she was rated "needs improvement" in nine areas, and in the remaining area she was rated "does not meet" standards. Although Pridgen refused to sign the evaluation, she did not file a rebuttal or grievance as was permitted. Burton recommended to his superiors that Pridgen's contract not be renewed; they concurred and made the same recommendation to the Springfield Board of Education. The Board voted not to renew Pridgen's contract.
 
 
 5
 Pridgen filed the instant action in May 1989. She claimed that her non-renewal was a result of sex-based discrimination, as evidenced by inaccurate and inconsistent performance evaluations and by sexist comments. At the three-day bench trial, Pridgen testified that Burton set out to "get rid of" her because she was a young single female who wore high-heeled shoes, drove a sports car, and preferred to use the title "Ms." instead of "Miss."
 
 
 6
 Pridgen testified that Burton made a number of comments to her, and to others about her, which she perceived to be sexist. Among other things, Burton: asked her if she were married and if she had any children; falsely told parents that she was divorced; commented on her high heels; saw a picture of her niece on her desk and remarked that he thought she had said she did not have any children; asked her if the flowers she received on her birthday were from her boyfriend; asked her if she were getting married over Christmas break; did not allow her to use the title "Ms." and required her to use "Miss" instead; referred to her car, a Camaro Z-28, as "racy"; told her that, as one of the few men in the building, it was his duty to scrape the ice off the windows of the female teachers' cars; and corrected one of the students that Pridgen should be referred to as "Miss," not "Ms."
 
 
 7
 Pridgen testified that two male teachers were evaluated differently during the following school year (1987-88), because they were allowed to teach the same subject at each evaluation whereas she had been required to teach different subjects.[2] Pridgen also testified that other teachers received more feedback on their evaluations than she did. Pridgen devoted substantial portions of her trial testimony to disputing the evaluations she received from Gray, Hardecke, and Burton; in every instance when the principals had marked her as less than satisfactory, she gave reasons as to why those ratings were unfair or inaccurate. She also alleged that Burton had missed numerous deadlines mandated by the District in preparing her evaluations and in meeting with her to discuss them. Pridgen claimed that Burton had "frauded" her lesson plan by copying it to the second form.
 
 
 8
 Burton denied making the majority of the purportedly sexist comments Pridgen had ascribed to him. Burton admitted referring to Pridgen's high heels, but testified he had suggested only that-for safety reasons-she keep another pair of shoes for use on the playground. He testified that the sex or marital status of his teachers made no difference to him. He also testified that another teacher had had her class picture taken in his presence with a sign that read "Ms. Collins," and that the yearbook (which he supervised) referred to Pridgen as "Ms. Pridgen." Burton denied requiring Pridgen to use "Miss" on the sign for her class photograph. Burton testified that he was trying to be helpful when he copied Pridgen's lesson plan to the more current form, and that he had done the same thing for another teacher.
 
 
 9
 The district court granted judgment to Burton and the District. The court found that while Burton "failed to strictly adhere to the time deadlines prescribed therein, these evaluations were generally conducted in accordance with the Teacher Performance Evaluation Handbook produced by Springfield Public Schools." The district court also found that Burton did not act with a sex-based discriminatory intent when he transcribed Pridgen's lesson plan from the short form to the longer form. The court found that there was insufficient evidence to support a finding that Burton conducted evaluations of male teachers in a manner that displayed a predisposition towards them and a willingness to treat them more favorably; the court noted that there were no evaluations of female teachers from the 1987-88 school year to compare with those of the male teachers, and it was unclear whether Burton intentionally conducted more thorough evaluations for male teachers or whether he had improved the manner in which he conducted the evaluations as he worked with the new method.
 
 
 10
 The district court held that Pridgen had failed to meet her burden of proving a prima facie case of discrimination. The court held that "[t]here was little evidence which would support a finding that defendant Burton's low evaluations of plaintiff were the result of sex-based discrimination. A preponderance of evidence, on the other hand, supports a finding that defendant Burton was called upon to exercise his personal, subjective judgment about plaintiff's job skills and did so on the basis of legitimate, non-discriminatory considerations alone."
 
 
 11
 The district court did not err in finding that Pridgen had failed to demonstrate a prima facie case, and by a preponderance of the evidence the evaluations were based on legitimate and non-discriminatory considerations alone. We have carefully reviewed the transcript and record in this case and cannot conclude that these findings of fact of the district court were clearly erroneous.
 
 
 12
 Pridgen's remaining arguments lack merit. A Title VII litigant has no right to a jury trial. Headley v. Bacon, 828 F.2d 1272, 1277 (8th Cir. 1987). We conclude that the district court did not abuse its discretion in denying Pridgen's attempt to amend the complaint well after discovery had been completed. See Brown v. Wallace, 957 F.2d 564, 566 (8th Cir. 1992) (per curiam) (leave to amend may be denied to avoid undue prejudice to nonmoving party). The Civil Rights Act of 1991 may not be applied retroactively. Fray v. Omaha World Herald Co., 960 F.2d 1370, 1377-78 (8th Cir. 1992). Finally, Pridgen's argument that she was prejudiced when she was deposed without benefit of counsel is unpersuasive.
 
 
 13
 Accordingly, we affirm.
 
 
 
 [1]
 The Honorable Russell G. Clark, Senior United States District Judge for the Western District of Missouri
 
 
 [2]
 There was only one male teacher at Williams during the school year that Pridgen taught there, and he was not evaluated that year